Curia, per Harper, Chancellor.
I suppose that if an administrator have in his hands the balance of an estate, and is afterwards'appointed the guardian of infants entitled to the estate, he will be chargeable as guardian, and the sureties to his guardianship bond will be liable, as in the case of Simpkins vs. Cobb, referred to by the Chancellor. So, if before his appointment, he has received a sum of money belonging to his wards, as in McDowall vs. Caldwell. Or, if in any other capacity, he be indebted to himself, as guardian, being unable to sue'himself, the debt shall be presumed to be paid, and he and his sureties will be liable. There is no exception to that part of the report, or the decree, which charges the sureties of James W. Sib-ley with that part of tlie estate of Mrs. McHardy which was actually in his hands, as administrator ; it is only to so much of the report and decree as charges him with the amount received by his co-administrator, Murray. It is supposed that he is liable for this on his .administration bond; that this constituted a debt to himself, and that he is, -therefore, chargeable in the character of guardian. The general rule of this Court is, that one executor is not liable for the assets which come into the hands of his co-executor, unless under particular circumstances, such as haying paid them over to him, having joined in a misapplication of them, or having joined in a receipt, by which he ena *498 bled him to receive them. See Williams on Executors, 1118, et seq. I have not found any distinction made between an executor and an administrator, and the authors lay down the rule, treating indiscriminately of both. In Jacomb vs. Harwood, 2 Ves. 267, Sir John Strange, the Blaster of the Rolls, after stating that one of several executors has the entire control of the personal estate, adds; “ It has been questioned, incase of administrators, whether one administrator had such a power, equal to that of executor ; and the attempt has been made to distinguish that from the case of executors, who, it was always agreed, might do so; and though in Hudson vs. Hudson, it was said, that the Lord Chancellor had been of opinion that one administrator could not release so as to bind the other, yet, when that case was more narrowly looked into, it appeared, clearly, that was applicable to the particular circumstances of that case; and the words of the decree in that case are, that the plaintiffs are not barred by the accounts stated, or the release accepted, from demanding an account from the two sons, in a Court of equity. But, after that, was Willand vs. Fenn, where it was held in B. R., after three arguments, that one administrator stood on the same ground and foundation with an executor.” No distinction seems to be made, with respect either to their power or duties. Indeed, if all administrators were required to join in any act, it would be so much more in their power. Trustees, it is said, are not liable for each other’s acts, though they join in a receipt, it being necessary that they should so join, for conformity; otherwise of an executor, whose single receipt is sufficient. Indeed, the plainest justice requires that each should be liable for his own acts, at least in the first instance.
But it is urged, that James W. Sibley was a joint obligor on the administration bond, and, by the very terms of his contract, bound for the administration of Murray, as well as for his own. This may be so, and I suppose that the personal representative of Sibley, and the sureties of himself and Murray, in Florida, may be made liable, at law, on that bond. But this is a different thing from his general liability as a trustee in this Court He will be liable as administrator, not as guardian. To constitute that debt *499 to himself, which would bring this case within the principle of the cases relied on, it is necessary that there should have been a breach of the condition of the bond, and to constitute a breach of the condition of the bond, it is necessary that Murray should have been called to account, and a decree obtained against him. If that had been done, and, in his default, a judgment had been obtained against Sibley, on the administration bond, this would have constituted such a debt to himself, on his being appointed guardian, as he was bound to pay. According to the view I have taken, the condition of the bond must be understood that each shall account for and pay over what he himself has received, and it is on the default of either to do this, that the liability of both attaches on the administration bond. Suppose that Murray were now alive and solvent, is it to be imagined that the Court would, in the first instance, make Sibley liable for the whole estate, without Murray’s being even a party to the suit 1 It appears that he is dead, and there is a suggestion, though I believe no proof, that his estate is insolvent. But this does not dispense with the necessity of first establishing the accounts against his personal representative. He alone is competent to litigate it. He might be able to show, that without any default of the administrator, Murray, it was impossible to collect some of the moneys now charged, or that he had paid money on account of the estate, of which it would be impossible that Sibley should furnish the evidence. But the sureties of Sibley’s guardianship bond can never be made liable. Whatever Sibley may have done, they certainly have never become bound for Murray’s faithful administration. Nor do I perceive that Sibley, or his sureties, can be made liable on the ground of his laches in failing to recover the estate from his co-administrator in Florida. He could have maintained no suit for that purpose there, in virtue of his appointment as guardian here. And I know of no principle on which he could be required, as matter of duty, to procure the appointment of guardianship there, in order to enable him to bring such a suit.
The motion to reverse the Chancellor’s decree, so far as respects the matter of the exception in question, is, therefore, granted, and the exception sustained.